UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Shatara Brown, Nikoe Lee, and Colleana Young, | Case No. 19-cv-3132 (WMW/KMM) |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Reese Pfeiffer, Fruen & Pfeiffer LLP, Michael Fruen, and M Fruen Properties LLC, | |
| Defendants. | |

---

This matter is before the Court on Plaintiff Shatara Brown's motion for a temporary restraining order enjoining Defendants from terminating Brown's lease of her home. (Dkt. 5.) For the reasons addressed below, the Court grants Brown's motion.

## BACKGROUND

Brown is a tenant of Defendant Reese Pfeiffer, acting on behalf of Defendants Fruen & Pfeiffer LLP, Michael Fruen, and M Fruen Properties LLC. Brown and two other tenants of Defendants allege that, in connection with their respective tenancies, Pfeiffer sexually harassed them by making several requests for sexual favors, as well as sexual advances and comments, towards them individually. Tenant-Plaintiffs allege that Pfeiffer retaliated against them because they refused to comply with his sexual harassment.

On one occasion before she began renting from Pfeiffer, Brown asserts, "Pfeiffer ran his hand up and down [her] thigh, massaging her leg," while assisting Brown with completing documents needed for her to receive monetary assistance from Hennepin

County. Pfeiffer continued to touch Brown's body and made sexually suggestive comments to her on several other occasions. He also told Brown that she could avoid paying certain fees and portions of rent in exchange for sexual favors because he would love to "fuck the shit out of [her]." Brown rejected each of Pfeiffer's requests for sexual favors.

Brown also alleges that Pfeiffer attempted to overcharge her rent, security deposit, and other fees throughout her tenancy. Because Brown was unable to pay these additional charges, Pfeiffer filed an eviction action against her on July 17, 2019. Pfeiffer subsequently agreed to dismiss and expunge the action. Pfeiffer filed a second eviction action against Brown on September 16, 2019. Following a hearing, the Hennepin County Housing Court dismissed and expunged the action.

On October 31, 2019, Pfeiffer provided Brown a notice of lease non-renewal, directing her to vacate the home by December 31, 2019. Pfeiffer subsequently filed a third eviction action against Brown on December 6, 2019, and a trial in that action currently is scheduled for January 15, 2020.

Brown and two other tenants filed this action against Pfeiffer and his business affiliates—Fruen & Pfeiffer LLP, Michael Fruen, and M Fruen Properties LLC. Plaintiffs allege that, by sexually harassing them, Pfeiffer discriminated against them on the basis of sex, in violation of the Fair Housing Act, 42 U.S.C. §§ 3601–3631, and the Minnesota Human Rights Act, Minn. Stat. ch. 363A. Plaintiffs also allege negligent supervision under Minnesota common law. Brown seeks a temporary restraining order enjoining Defendants from terminating her lease. This Court issued a briefing schedule on December 20, 2019,

and ordered Defendants to file a response by December 26, 2019, at 12:00 p.m. Defendants failed to file a response within the time period permitted.

## ANALYSIS

Federal Rule of Civil Procedure 65 authorizes a district court to grant injunctive relief in the form of a temporary restraining order. When determining whether a temporary restraining order is warranted, a district court considers four factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between this harm and the injury that an injunction would inflict on other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The burden to establish that injunctive relief should be granted rests with the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The purpose of a temporary restraining order is to maintain the status quo. *Kelley v. First Westroads Bank*, 840 F.2d 554, 558 (8th Cir. 1988).

### I. Likelihood of Success on the Merits

Brown must demonstrate that she is likely to succeed on the merits of her claims. *See Dataphase*, 640 F.2d at 114. However, at this stage of the proceedings, the Court need not assess Brown's probability of success on the merits "with mathematical precision." *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir. 1987). And Brown need not establish that she ultimately will win or that a greater-than-50-percent likelihood of success exists. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991); *Dataphase*, 640 F.2d at 113. To satisfy this prong of the *Dataphase* test, Brown

only needs to demonstrate that she is likely to succeed on one of her claims. *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 742–43 (8th Cir. 2002).

To prevail on a sexual-harassment claim under the Fair Housing Act or the Minnesota Human Rights Act, Brown must prove that Pfeiffer created "a hostile housing environment" or engaged in "quid pro quo sexual harassment." *United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) (quoting *Quigley v. Winter*, 598 F.3d 938, 946–47 (8th Cir. 2010)). Brown maintains that her quid pro quo sexual-harassment claim is likely to succeed. Quid pro quo sexual harassment "occurs when housing benefits are explicitly or implicitly conditioned on sexual favors." *Quigley*, 598 F.3d at 947 (internal quotation marks omitted). To prove quid pro quo sexual harassment, a plaintiff must establish that (1) she was a member of a protected class, (2) she was subjected to unwanted requests for sexual favors, (3) the harassment was based on sex, and (4) her submission to the unwanted advances was an express or implied condition of receiving housing benefits. *See id.*

Brown alleges that Pfeiffer told her that she could avoid paying a portion of her rent or other lease-related fees if he could "fuck the shit out of [her]." If proven, Pfeiffer's statement demonstrates that Pfeiffer subjected Brown to a request for a sexual favor, this harassment was based on sex, and Brown's submission to the sexual request was an express condition of receiving housing benefits, namely relief from her rent obligation. Based on this record, Brown has established that her claim for quid pro quo sexual harassment is likely to succeed on the merits. This factor weighs in favor of granting Brown's motion for a temporary restraining order.

## II. Threat of Irreparable Harm

To obtain a temporary restraining order, a movant also must establish the threat of irreparable harm. *See Dataphase*, 640 F.2d at 114. To do so, "a party must show that the harm is certain and . . . of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Without a temporary restraining order, Brown will be forced to vacate her home by December 31, 2019, and may become homeless. The threatened loss of Brown's lease is an irreparable injury. *See, e.g.*, *Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) (holding that losing a lease is irreparable harm because "the loss of an interest in real property constitutes an irreparable injury"); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) (same). Accordingly, this factor also weighs in favor of granting Brown's motion for a temporary restraining order.

## III. Balance of the Equities

The Court also weighs the threat of irreparable harm to the movant against any injury the restraining order would inflict on other parties. *See Dataphase*, 640 F.2d at 114. Here, the Court discerns no meaningful injury that Defendants may suffer if Brown continues to lease the rental unit, subject to the current lawful terms and conditions. This is a rental unit, and Defendants likely will try to find another tenant. Maintaining the status quo, in which Brown remains a paying tenant of the unit, will not affect Defendants' interest in any material way. Therefore, the balance of the equities weighs in favor of granting Brown's motion for a temporary restraining order.

### IV. Public Interest

Finally, when deciding whether a temporary restraining order should issue, the Court considers the interests of the public. *See Dataphase*, 640 F.2d at 114. Congress has declared that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. "[I]f the court finds that a discriminatory housing practice has occurred or is about to occur," the public interest is served by effective enforcement of the Fair Housing Act. *Id.* § 3613(c) (providing that "the court may award to the plaintiff . . . temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)"); *Gonzalez v. Recht Family P'ship*, 51 F. Supp. 3d 989, 992 (S.D. Cal. 2014) (finding that plaintiff met the public-interest requirement because "[t]he public interest has been authoritatively declared by Congress in its enactment of the [Fair Housing Act]" (internal citation marks omitted)).

On balance, the *Dataphase* factors favor granting Brown's motion for a temporary restraining order.

### ORDER

Based on the foregoing analysis and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Shatara Brown's motion for a temporary restraining order, (Dkt. 5), is **GRANTED**.

2. Defendants Reese Pfeiffer, Fruen & Pfeiffer LLP, Michael Fruen, and M Fruen Properties LLC are enjoined from threatening to evict Plaintiff

Shatara Brown or taking any action to evict Brown or terminate Brown's lease of the home, located at 4848 Maryland Avenue N, Crystal, MN 55428.

3. Consistent with Plaintiff Shatara Brown's assurances that she will pay her portion of the monthly rent to Mid-Minnesota Legal Aid's client trust account, no bond is required.

4. This temporary restraining order will expire at 11:59 P.M. on January 24, 2020, unless it is extended by this Court.

5. Plaintiff Shatara Brown's motion for and memorandum in support of a preliminary injunction shall be filed no later than January 3, 2019. Defendants' memorandum in opposition to the motion for a preliminary injunction shall be filed no later than January 10, 2019.

6. The parties are ordered to contact United States Magistrate Judge Katherine M. Menendez's Chambers as soon as possible to schedule a settlement conference. That settlement conference shall occur on or before January 16, 2020.

7. The Court will hold a hearing on the motion for a preliminary injunction on January 17, 2020, at 2:00 p.m. in Courtroom 7A at the United States District Court for the District of Minnesota, 316 North Robert Street, Saint Paul, MN 55101.

Dated: December 27, 2019                s/ Wilhelmina M. Wright
                                        Wilhelmina M. Wright
                                        United States District Judge