UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Shatara Brown, Nikoe Lee, and Colleana Young, | Case No. 0:19-cv-03132-MWW-KMM |
| Plaintiffs, | |
| v. | **ORDER** |
| Reese Pfeiffer; Fruen & Pfeifer LLP; Michael Fruen; and M Fruen Properties; | |
| Defendants. | |

This matter is before the Court on Shatara Brown, Nikoe Lee, and Colleana Young's ("Plaintiffs") motion to amend the complaint. [ECF No. 52.] The Plaintiffs bring the motion to correct a factual error in the original complaint and supplement certain allegations that support their claims. [Pls.' Mem. at 1, ECF No. 55.] Reese Pfeiffer, Fruen & Pfeifer LLP, Michael Fruen, and M Fruen Properties ("Defendants") oppose the motion to amend. For the reasons that follow, the motion is granted in part and denied in part.

**I.    The Original Complaint**

On December 19, 2019, the Plaintiffs filed their original complaint. [Compl., ECF No. 4.] The Plaintiffs allege that the Defendants own and operate rental properties in or around Hennepin County and that they provide low-rent housing. The Plaintiffs include one former tenant (Ms. Lee) and two current tenants (Ms. Brown and Ms. Young). Ms. Lee previously rented a home located at 4848 Maryland Ave N., Crystal, Minnesota. Ms. Brown rents that home now. Ms. Young currently rents an apartment located at 9840 Nicollet Ave. S., Bloomington, Minnesota.

The allegations in the original complaint that are most relevant to the motion to amend addressed in this Order concern the relationship between the individual Defendants, Mr. Fruen and Mr. Pfeifer, and the business entity Defendants, Fruen & Pfeifer LLP ("F&P") and M Fruen Properties ("MFP").[1] According to the original complaint, F&P owns the Maryland Avenue

---

[1] The majority of the allegations in the original complaint, which form the substance of the Plaintiffs' claims are unaffected by the proposed amendment.

1

home where Ms. Lee previously lived and where Ms. Brown currently resides. [*Id.* ¶ 22.] Mr. Fruen is allegedly a co-owner of this property as well. [*Id.* ¶ 136.] F&P acts primarily through Mr. Pfeifer, who is also F&P's "owner and principal agent." [*Id.* ¶¶ 25, 138.] The Plaintiffs allege that Mr. Pfeifer is also an employee of Mr. Fruen and MFP. [*Id.* ¶ 19, 26.] Mr. Pfeifer acts and is listed as a landlord for the Maryland Avenue home and the Nicollet Avenue apartment. [*Id.* ¶¶ 20–21.]

Mr. Fruen also acts as a landlord for properties that he owns individually or through his interests in F&P and MFP. [*Id.* ¶¶ 23, 25.] MFP acts primarily through Mr. Fruen, who is its owner and principal agent. [*Id.* ¶ 25.] Mr. Fruen is listed as landlord on the leases for each of the Plaintiffs. [*Id.* ¶ 24.] Mr. Pfeiffer is alleged to act as an agent and property manager for properties owned by Mr. Fruen and MFP. [*Id.* ¶ 26.] At one point in the original complaint, it is alleged that MFP "is listed as owner of the multi-unit property located at 9840 Nicollet Avenue South, Bloomington, Minnesota…." [*Id.* ¶ 25.] Elsewhere, the original complaint asserts that Mr. Fruen and MFP are co-owners of the Nicollet Avenue apartment building. [*Id.* ¶ 137.]

Generally, the Plaintiffs allege that "Defendants prey upon women who need low-rent housing by routinely conferring housing benefits because of, or conditioning rental terms on, a woman's willingness to perform sexual favors for [Mr. ] Pfeiffer." [Compl. ¶ 4; *see also id.* ¶¶ 48–49, 68, 72, 78, 82–84, 93, 114, 117–19, 121.] The original complaint includes three causes of action, each asserted against all defendants: (1) violation of the Fair Housing Act, 42 U.S.C. § 4601, *et seq.*; (2) violation of Minnesota Human Rights Act, Minn. Stat. § 363A, *et seq.*; (3) negligent supervision. [*Id.* ¶¶ 126–42.]

## II. The Proposed Amended Complaint

The Plaintiffs submitted a Proposed Amended Complaint ("PAC") in support of their motion to amend. [PAC (Clean Version), ECF No. 56-1; PAC (Redline version), ECF No. 56-2.] The PAC adds an allegation that F&P "is an alter-ego for Reese Pfeiffer and Michael Fruen and is merely a façade for individual dealings. [PAC ¶ 24.] In addition, the Plaintiffs assert that MFP "is the alter-ego of Defendant Fruen and merely a façade for individual dealings." [*Id.* ¶ 34.] The Plaintiffs point to an official document from the City of Crystal for the Maryland Avenue home identifying Mr. Pfeiffer as the owner of the property rather than F&P. [*Id.* ¶ 26 & Ex. A.] The same property is allegedly insured to both individual defendants rather than to F&P. [*Id.* ¶ 27.] Mr. Pfeiffer and Mr. Fruen have been "identified as individual landlord/plaintiffs in eviction actions involving properties owned by Fruen & Pfeiffer LLP." [*Id.* ¶ 28 & Ex. B.] The individual

2

defendants "do not always file powers of authority in eviction actions filed regarding properties owned by Fruen & Pfeiffer LLP." [*Id.* ¶ 29.]

The PAC also alleges that MFP "is the alter-ego of Defendant Fruen and merely a façade for individual dealings." [*Id.* ¶ 35.] Mr. Fruen's "name is listed as the mailing address on the City of Bloomington rental license for the [Nicollet Avenue apartment building]." [*Id.* ¶ 36.] MFP is not named on the Nicollet Avenue building's rental license. [*Id.* ¶ 36 & Ex. C.] Mr. Fruen is listed as the owner of the Nicollet Avenue building "on Certificates of Rent Paid provided to tenants to file with their taxes." [*Id.* ¶ 37 & Ex. D.] Certificates of Rents Paid received by Ms. Young prior to the filing of this lawsuit also listed Mr. Pfeiffer as the owner of the Nicollet Avenue property, rather than MFP. [*Id.* ¶ 135 & Ex. E.] The Plaintiffs assert that Mr. Fruen was aware of Mr. Pfeiffer's alleged sexual harassment of female tenants, and Mr. Fruen's son, Andrew Fruen, "acknowledged Defendant Pfeiffer's inappropriate actions and that he, Andrew Fruen, has 'brought it up many times.'" [*Id.* ¶ 38.] However, Mr. Fruen "did not take any significant steps to prevent the sexual harassment of his tenants." [*Id.* ¶ 39.] He used Mr. Pfeiffer as his agent and did not stop Mr. Pfeiffer "from engaging in inappropriate interactions with the tenants" of F&P or MFP. [*Id.* ¶ 39.]

Finally, as noted above, the original complaint alleged (at one point) that Mr. Fruen and F&P are the co-owners of the Nicollet Avenue property. [Compl. ¶ 137.] That allegation would be changed by the PAC, which asserts that: F&P owns this property; Mr. Fruen owns F&P; and Mr. Fruen was responsible for supervising Mr. Pfeiffer's managerial duties over the property. [PAC ¶ 156.]

## III. Legal Standards

As is relevant here, the Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Under this Rule, a court can deny leave to amend in the following circumstances: (1) undue delay; (2) bad faith; (3) dilatory motive; (4) repeated failure to fix deficiencies in prior amendments; (5) undue prejudice to the non-moving party; or (6) futility of amendment. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005).

**IV. Analysis**

The Defendants argue that leave to amend should be denied for several reasons, each of which the Court addresses below.[2]

**A. Bad Faith**

Mr. Fruen and MFP argue that leave to amend should be denied because the Plaintiffs' admittedly mistaken allegation in Paragraph 137 of the original complaint that Mr. Fruen was a co-owner of the Nicollet Avenue property should have been identified if Plaintiffs or their counsel had fulfilled their obligations to make a reasonable investigation of the facts under Fed. R. Civ. P. 11 prior to filing this case. The Court does not entirely understand the Defendants' argument that the Plaintiffs' efforts to correct a mistake should be rejected as a sanction for making that mistake in the first place. Mr. Fruen and MFP suggest that the allegations the Plaintiffs seek to add in the PAC "were known or should have been know to Plaintiffs after their investigation." [Fruen Mem. at 1, ECF No. 60.] Though Mr. Fruen and MFP reference only unfair prejudice in a heading as a basis for denying leave to amend, these arguments, especially by reference to Rule 11, are more appropriately characterized as advocating for denial of leave to amend on grounds of bad faith. Similarly, Mr. Pfeiffer and F&P assert that the Plaintiffs' counsel has not acted in "good faith" in seeking amendment, but has instead attempted to "mislead and misinform" the Court and the trier of fact by using "dated, irrelevant and misleading documents" attached to the PAC. [Pfeiffer Mem. at 1–2, ECF No. 62.] This argument likewise suggests that leave to amend should be denied because the moving party has acted in bad faith. Mr. Fruen and MFP complain about the PAC's attachments, specifically asserting that the Plaintiffs acted in bad faith by appending certain materials to the PAC. [Fruen Mem. at 5.]

"[T]he number of decisions addressing bad faith in the Rule 15 context are relatively few and far between." *ecoNugenics, Inc. v. Bioenergy Life Science, Inc.*, 355 F. Supp. 3d 785, 791 (D. Minn. 2019). "[I]n general, courts have concluded that bad faith is a subjective inquiry that requires proof that the moving party acted with intent to deceive, harass, mislead, delay, or disrupt." *Hari v. Stuart*, No. 19-cv-1330 (ECT/TNL), 2019 WL 6490792, at *3 (D. Minn. Dec. 3, 2019) (quoting *ecoGenics*, 355 F. Supp. 3d at 791) (internal quotations omitted). Bad faith requires a showing of "'conscious doing of a wrong because of dishonest purpose or moral

---

[2] The Defendants make no suggestion that amendment should be denied based on undue delay, dilatory motive, or repeated failure to fix deficiencies from prior amendments.

obliquity.'" *ecoGenics*, 355 F. Supp. 3d at 791 (quoting *Wizards of the Coast LLC v. Cryptozoic Enter. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015)). The party opposing the amendment has the burden of showing bad faith. *Id.* (citing *Wizards*, 309 F.R.D. at 649). "The Court … indulges all reasonable inferences in favor of allowing the amendment and imputes benign motives to the moving party whenever it is plausible to do so." *Id.* (citing *Wizards*, 309 F.R.D. at 649).

Applying these standards, the Court concludes that leave to amend should not be denied based on any alleged bad faith by the Plaintiffs or their counsel. There has been no showing that the Plaintiffs' admittedly mistaken allegation of co-ownership between MFP and Mr. Fruen of the Nicollet Avenue apartment building was made for dishonest purpose or with moral obliquity. At most, the assertion that the Plaintiffs should have known he was not an individual co-owner could indicate negligence in a pre-suit investigation (though the record before the Court would not support such a finding at this stage). "[B]ad faith requires more than mere negligence or bad judgment…." *ecoGenics*, 455 F. Supp. 3d at 791 (citing *Wizards*, 309 F.R.D. at 651). The PAC corrects the mistake from paragraph 137 of the original complaint, and Mr. Fruen and MFP have shown no basis to deny amendment due to an earlier error.

The Defendants next argue that the attachments to the PAC were added to the record in bad faith and do not belong in this litigation. A declaration of Mr. Pfeiffer's previous counsel indicates that, contrary to the allegations in the PAC, eviction action complaints filed by Mr. Pfeiffer on behalf of F&P related to the Maryland Avenue home were filed in the name of the business. [Petricka Decl. ¶¶ 4–5, ECF No. 63.] Because these same documents were previously submitted by Ms. Brown in this litigation, Mr. Pfeiffer argues that the Plaintiffs "were fully aware that the business entity did in fact file for the eviction and NOT Reese Pfeiffer." [*Id.* ¶ 5.] Mr. Pfeiffer claims that this shows the Plaintiffs' attachment of documents to the PAC that use Mr. Pfeiffer's name instead of the business entity's, most of which relate to properties not at issue in this case, are intended to mislead the Court. Again, the Court disagrees that this shows bad faith justifying denial of leave to amend. At most, Mr. Pfeiffer and F&P have demonstrated that the parties disagree regarding the degree to which the attachments actually support the Plaintiffs' claims. This does not come close to a showing of bad faith.

Mr. Pfeiffer also complains that Exhibit A to the PAC is a document that was completed by the City of Crystal, not by Mr. Pfeiffer. [Petricka Decl. ¶ 2.] Exhibit A lists Mr. Pfeiffer as the owner of the Maryland Avenue home and includes contact information for an individual named Annette Brustad, who works for the City of Crystal. [PAC, Ex. A.] Mr. Pfeiffer argues that it was misleading for the Plaintiffs to attach such a document to their PAC when a simple phone call to

Ms. Brustad would have revealed that Mr. Pfeiffer did not complete the document himself. [Pfeiffer Mem. at 2.] This argument also fails to establish that the Plaintiffs have acted with dishonest intent or moral obliquity. Again, at most the Defendants have articulated a basis for their belief that the document is weak evidence to support the Plaintiffs' position that Mr. Pfeiffer blurs the line between himself and his business. Bad faith justifying denial of leave to amend requires something more.[3]

Finally, Mr. Fruen argues that the Plaintiffs have improperly attached a City Rental License for the Nicollet Avenue property to the PAC that lists "Mike Fruen" under the "Mailing Address" field in an attempt to show that Mr. Fruen owns a property individually. [Fruen Mem. at 6.] He notes that the mailing address listed on the form is the office address for MFP registered with the Minnesota Secretary of State. [*Id.*] For the reasons described above, this is a disagreement regarding the evidentiary weight of the document, not a showing of bad faith in seeking to attach it.

For these reasons, the Court will not deny the Plaintiffs' motion based on any alleged bad faith in seeking leave to amend.

### B. Unfair Prejudice

Mr. Fruen and MFP argue that if leave to amend is granted, they "will have been unfairly prejudiced by incurring the time, cost and expense responding to Plaintiffs' faulty Complaint." Fruen Mem. at 3.][4] It is unclear whether they are referring to the excuse of opposing the expense of opposing the amendment, the expense of answering or seeking to dismiss the amended complaint, or the expense of being in this litigation at all. None of these arguments wins the day.

The party opposing a motion to amend must show that it will be unfairly prejudiced. *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000). Denial of leave to amend is not appropriate when unfair prejudice is claimed merely because the non-moving party would have the "burden of undertaking discovery[.]" *Id.* (citing *United States v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989); *see also GenoSource, LLC v. Inguran, LLC*,

---

[3] Mr. Pfeiffer's argument that the Plaintiffs acted in bad faith by attaching Exhibits D and E to the PAC because they are are, respectively, irrelevant and outdated merits no further comment.

[4] Mr. Pfeiffer and F&P suggest that they would be unfairly prejudiced by the amendment because the PAC "intentionally misstate[s] the facts." [Pfeiffer Mem. at 5.] This assertion merely repeats the bad-faith argument in different packaging, and the Court rejects it for the same reasons discussed above.

2019 WL 2041661, at *6 (N.D. Iowa Apr. 11, 2019) (rejecting the defendant's unfair prejudice argument based on the assertion that the proposed amendment would expand the scope of the dispute and subject it to greater burdens in the litigation).

Mr. Fruen and MFP are unable to point to any prejudice that would justify denial of a motion to amend. They reference that the amended pleading might expand the scope of the litigation against them or require them to incur additional cost. However, as the cases cited above show, such costs are not enough on their own to deny leave. This case is in its earliest stages (a schedule has not yet been established), and the timing certainly does not support a prejudice argument. As a result, the Defendants will not be unfairly prejudiced by allowing the Plaintiffs to file the PAC.

### C. Futility of Alter-Ego Claims

Mr. Fruen and MFP finally take issue with the adequacy of the PAC's alter-ego claims. Although this argument is poorly developed, it raises a concern the Court shares. As the Defendants describe: "[i]n vague terms, Plaintiffs suggest that the individual Defendants' use of their names on repair work orders, unlawful detainer actions, and Minnesota Department of Revenue Certificates of Rent Paid allows them to look past the entity-ownership of the Nicollet Avenue Property and assert a claim directly against Fruen." [Fruen Mem. at 5.] Mr. Fruen and MFP argue that corporate law and notice pleading do not support the Plaintiffs' claim for piercing the corporate veil based upon these facts because "[t]he failure to observe corporate formalities is concerned with more egregious departures from corporate formalities." [Fruen Mem. at 5.] Mr. Pfeiffer and F&P also appear to assert that the PAC does not adequately allege a claim for piercing the corporate veil. The Court construes these arguments to assert that the motion for leave to amend should be denied based on futility of any piercing-of-the-corporate-veil claim.[5]

A motion to amend can be denied on futility grounds when the amended complaint "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

---

[5] In his declaration, Mr. Fruen asserts that he has never "had direct contact with the Plaintiffs in this lawsuit," and "[p]rior to this litigation, I do not recall ever receiving and/or otherwise being made aware of any complaint or concern regarding Mr. Pfeiffer's behavior or actions." [Fruen Decl. ¶¶ 5–6.] To the extent the Defendants argue that such denials demonstrate the futility of any of the Plaintiffs' other claims, the Court declines to consider them because a futility analysis does not look at matters outside the pleadings or contrary evidence presented by the party opposing amendment.

7

Procedure." *Cornelia I. Croswell GST Trust v. Possis Medical, Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). To survive a motion to dismiss for failure to state a claim, the proposed amended complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 500 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1162 (D. Minn. 2013) (quoting *Ashcroft v. Iqbal*, 550 U.S. 662, 678 (2009)).

Under Minnesota law, "[a] court may pierce the corporate veil to hold a party liable for the acts of a corporate entity if the entity is used for a fraudulent purpose or the party is the alter ego of the entity." *Johnson v. Evangelical Lutheran Church in America*, Civil No. 11-23 (MJD/LIB), 2011 WL 2970962, at *6 (D. Minn. July 22, 2011) (quoting *Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009)). To show that a corporation is merely the alter ego of a party requires a two-part test: "(1) analyzing the reality of how the corporation functioned and the defendant's relationship to that operation, and (2) finding injustice or fundamental unfairness." *Id.* (quoting *Minn. Power v. Armco, Inc.*, 937 F.2d 1363, 1367 (8th Cir. 1991)); *MacDonald v. Summit Orthopedics, Ltd.*, 681 F. Supp. 2d 1019, 1025 (D. Minn. 2010) (same).

The first prong involves evaluation of several factors that must be shown for a court to hold an individual personally liable for the acts of the corporation. These factors include:

> insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely façade for individual dealings.

*Damon v. Groteboer*, 937 F. Supp. 2d 1048 (D. Minn. 2013) (quoting *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979)). Several of these factors must be present to disregard the corporate form. *SICK, Inc. v. Motion Control Gr.*, 2003 WL 21448864, at *9 (D. Minn. June 19, 2003) (citing *Victoria Elevator*, 283 N.W.2d at 512)). "The second prong requires showing that piercing the corporate veil is necessary to avoid injustice or fundamental unfairness." *Johnson*, 2011 WL 2970962, at *6 (quoting *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997)).

The Court is troubled by the extent to which the Defendants failed to develop their arguments concerning the inadequacy of the PAC's attempt to assert alter-ego liability claims

against the individual Defendants for their relationships to F&P and MFP. They did not point to case law analyzing such claims based on pleading standards of Rule 12(b)(6) as would be expected of an argument that a proposed alter-ego claim was futile.[6] And they offered little in the way of reasoned argument to support the suggestion that the Plaintiffs' proffered veil-piercing claims were inadequately pled. This is ironic given the degree to which the Defendants' memoranda criticized the Plaintiffs' counsel for allegedly shoddy work.

Nevertheless, the Court finds the Plaintiffs' have so far failed to state a plausible claim for piercing the corporate veil, so allowing amendment at this time to include such a claim would be futile. The facts in the PAC and the documents attached to it that are relevant to a veil-piercing claim concern the Defendants' alleged failures to observe corporate formalities. Taken as true, the Plaintiffs' relevant allegations and the exhibits show that Mr. Fruen and Mr. Pfeiffer sometimes used their own names on documents, rather than the names of F&P and MFP, when they acted as agents of their businesses. Plaintiffs have referred the Court to no case in which similar conduct, without more, has been found adequate to disregard the corporate form and hold individuals liable. [*See* Pls.' Mem. at 8.] The Courts own research has not identified any precedent in which similar acts have been found to be a basis for disregarding the corporate form.

Even if such conduct could support an inference that F&P and MFP failed to observe corporate formalities, it would not be enough. An alter-ego claim requires that "a number" of the first-prong factors be present, and the PAC does not state any facts relevant to those other factors. *SICK*, 2003 WL 21448864, at *9 (quoting *Victoria Elevator*, 283 N.W.2d at 512). For example, the Plaintiffs do not allege that either business was insufficiently capitalized, that the companies failed to pay dividends, that the individual Defendants siphoned funds from the entities, or that the businesses have no corporate records. Moreover, the allegations in the PAC that F&P is the alter-ego of both Mr. Fruen and Mr. Pfeiffer and that MFP is the alter-ego of Mr. Fruen are conclusory, and the Court need not accept them as true for purposes of a futility analysis. *Maurice Sunderland Architecture, Inc. v. Simon*, No. CIV 4-94-122, 1994 WL 1091851, at *2 (D. Minn. Apr. 6, 1994) (dismissing veil-piercing claims and finding allegations

---

[6] Mr. Fruen and MFP cite *Damon v. Groteboer*, 937 F. Supp. 2d 1048 (D. Minn. 2013), in their memorandum, but that case dealt with a motion for summary judgment, which applies a different standard than this Court must in the context of a futility argument.

that individual defendants "control and are alter egos of the corporate defendants [were] conclusory legal allegations that need not be construed as true").

Because the Plaintiffs have not pled factual content to allow the Court to draw the reasonable inference that F&P and MFP are merely façades for the individual dealings of Mr. Fruen and Mr. Pfeiffer, the Court finds that the PAC's piercing-the-corporate-veil claims are futile. *See Ness*, 933 F. Supp. 2d at 1166 (dismissing alter-ego claims where the plaintiffs failed to "make any factual allegations about the existence of factors under the first prong that would support an alter-ego claim" and instead only alleged the use of the same addresses for the relevant businesses and flow of profits from one business to another); *Maurice Sunderland*, 1994 WL 1091851, at *2 (dismissing alter-ego claim where the plaintiffs failed to allege "any of the factors Minnesota law requires in order to pierce the corporate veil"). However, the facts supporting alter-ego liability may emerge during the course of discovery in this case. Nothing in this Order should be read to foreclose a future, better-pled and substantiated claim in this regard.

V.      **Next Steps**

Having concluded that the Plaintiffs' proposed amendment is futile to the extent it seeks to assert an alter-ego claim, the Court is left to determine the proper disposition of the Plaintiffs' motion to amend. The Court could deny leave to amend because the specific request made by the Plaintiffs is for permission to file the PAC as it is drafted, and the Court has determined that amended pleading does not set forth a plausible claim for piercing the corporate veil. However, the Court notes that two of the changes to the original complaint that the PAC makes (removing the allegation in paragraph 137 of the original complaint that Mr. Fruen is a co-owner, individually, of the Nicollet Avenue property, and modifying paragraph 26 to reflect the same concern) are unrelated to any claim for piercing the corporate veil. Moreover, in this respect, the PAC corrects an error about which the Defendants themselves have complained. Under these circumstances, preventing the Plaintiffs from fixing these errors in the original complaint because the PAC contains other allegations intended to support a claim that is inadequately pled is not the most prudent course.

The Court concludes that the Plaintiffs should be allowed to file a First Amended Complaint, subject to certain conditions. Specifically, the Court concludes that the Plaintiffs should be required to remove those paragraphs from the PAC that are included solely to support the alter-ego claims that the undersigned has found to be futile as pled. 6 *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1486 (3d ed., Aug. 2019 Update)

10

("The court also may narrow the scope of the amendment if it considers the request too broad. Thus, in one suit a party's right to amend was conditioned on the removal of thirty-four paragraphs from the proposed amendment because it dealt with matter that already had been subject to a final adjudication.").

Based on the Court's review, the following paragraphs were added to the PAC to support the alter-ego claims: 24, 25, 27, 28, 29, 34, 35, 36, 37, 131, 134, and 135. Similarly, some of the exhibits attached to the PAC were included to support the alter-ego claims. These include Exhibits: A, B, C, D, and E.[7] The facts the Plaintiffs seek to establish through the allegations in these paragraphs and the exhibits do not, at this time, appear to have any bearing on the viable claims that are found in the PAC. Accordingly, if the Plaintiffs remove these paragraphs and exhibits from the PAC, they may file a First Amended Complaint that addresses the issues with paragraphs 26 and 137 of the original complaint.

## VI. Order

The Court finds that the Defendants failed to demonstrate that leave to amend should be denied based on undue prejudice or bad faith. However, the Court finds that the PAC contains insufficient allegations to support a plausible claim for piercing the corporate veil, so allowing amendment to permit those claims would be futile. Accordingly, the Plaintiffs' motion to amend **[ECF No. 52]** is **GRANTED IN PART** and **DENIED IN PART**, as explained above.

Date: March 11, 2020

                                             *s/Katherine Menendez*
                                             Katherine Menendez
                                             United States Magistrate Judge

---

[7] Exhibits F and G are copies of Ms. Brown's lease agreements for the Maryland Avenue property, and Exhibit H is a copy of Ms. Young's lease for the Nicollet Avenue property. These exhibits are certainly relevant to the Plaintiffs' viable claims against the Defendants and may remain attached to an amended pleading that complies with the conditions established in this Order.