UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Shatara Brown, Nikoe Lee, and Colleana Young, | Case No. 19-cv-3132 (WMW/KMM) |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT MICHAEL FRUEN'S MOTION TO DISMISS** |
| Reese Pfeiffer, Fruen & Pfeiffer LLP, Michael Fruen, and M Fruen Properties LLC, | |
| Defendants. | |

---

Before the Court is Defendant Michael Fruen's motion to dismiss Plaintiffs' first amended complaint, as asserted against Fruen individually, for failure to state a claim on which relief can be granted. (Dkt. 91.) For the reasons addressed below, Fruen's motion to dismiss is granted.

## BACKGROUND

Plaintiffs Shatara Brown, Nikoe Lee, and Colleana Young commenced this action against Defendants Reese Pfeiffer, Fruen & Pfeiffer LLP (F&P), Michael Fruen, and M Fruen Properties LLC (MFP), for violating the Fair Housing Act (FHA), 42 U.S.C. §§ 3601, *et seq.*; and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A, *et seq.*; and for negligent supervision. Plaintiffs allege that Pfeiffer sexually harassed them, made sexual advances towards each of them, and retaliated when they refused to comply with his sexual advances.

Pfeiffer and Fruen are co-owners of F&P, and Fruen owns MFP. Lee resided in a property owned by F&P (the Maryland Avenue Property), where Pfeiffer is the landlord and property manager. Brown currently lives in the Maryland Avenue Property. Young also resides in a property owned by MFP (the Nicollet Avenue Property), and Pfeiffer is the landlord and property manager.

Plaintiffs allege the following facts. Lee began renting from Pfeiffer in 2018. When Pfeiffer met with Lee in May 2018, he asked her inappropriate questions, such as what she would be willing to do if she fell behind on rent, whether she had a boyfriend, and whether she would do things that she did not have to report to the IRS. Pfeiffer also told Lee that she had a "heckuva body." Lee considered these comments to be unwanted sexual advances. Pfeiffer significantly increased Lee's rent in June 2018, which Lee understood as Pfeiffer's attempt to make her vulnerable and pressure her to succumb to Pfeiffer's sexual advances. Because of this conduct, Lee decided to move out of the residence.

Brown began renting the Maryland Avenue Property in August 2018. Prior to moving in, Brown met with Pfeiffer in his van to complete an application to obtain financial assistance to pay the security deposit. During the meeting, Pfeiffer massaged Brown's upper thigh. When Brown was moving in, Pfeiffer asked Brown several times whether she had a boyfriend and whether a man would be moving in with her. In October 2018, Brown met Pfeiffer at his home because, he contended, she owed him money. Pfeiffer told Brown they could "clear up the money" because he would "love to f*ck the sh*t out of her." Pfeiffer made sexual advances on numerous other occasions, alleged that Brown owed him

2

money without providing documentation, and told her "I know a way you can catch up on your rent, but you just won't give in."

Pfeiffer filed three eviction actions against Brown for nonpayment of rent. The parties agreed to dismiss the first action, and the second action was dismissed on procedural grounds. On October 31, 2019, Pfieffer provided Brown a notice of lease non-renewal, which demanded that Brown vacate the premises by December 31, 2019. After Brown's counsel advised Pfeiffer that the notice was retaliatory and unenforceable, Pfeiffer filed the third eviction action. During the hearing before this Court on Brown's motion for a preliminary injunction, Pfeiffer agreed to abandon the eviction action.

Young met with Pfeiffer in January 2017 and signed a lease for the Nicollet Avenue Property. During the meeting, Pfeiffer asked Young how she obtained her money. When Young told Pfeiffer where she was employed, Pfieffer asked if she "danced" or "did anything on the side." One year later, when Young was seven months pregnant, Pfeiffer went to Young's residence to collect rent. Pfeiffer asked to touch Young's abdomen and commented that "she was looking so good she must be getting sex." Pfeiffer made another sexual advance in March 2019 while collecting rent. On this occasion, Pfeiffer propositioned Young for sexual favors and offered to buy her a massage table.

Plaintiffs allege that Defendants violated the FHA by (1) engaging in *quid pro quo* sexual harassment; (2) creating a hostile environment by engaging in sexual harassment; (3) engaging in sexual discrimination; and (4) engaging in coercion, intimidation, threats, or interference with the exercise or enjoyment of Plaintiffs' rights under the FHA. Plaintiffs also allege that Defendants violated the MHRA by denying or withholding

3

housing because of sex, engaging in discrimination because of sex, and retaliating against Plaintiffs because they opposed Defendants' unlawful practices. In addition, Plaintiffs allege a negligent-supervision claim against F&P, MFP, and Fruen. Fruen moves to dismiss each claim brought against him in his individual capacity.

## ANALYSIS

To survive a motion to dismiss, a complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. And legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 679. Generally, a district court may not consider materials outside the pleadings when ruling on a motion to dismiss, but a court may consider "materials that are necessarily embraced by the pleadings." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

## I.     FHA and MHRA Claims Against Fruen[1]

The FHA prohibits several types of discrimination in the rental of housing, including discrimination on the basis of sex. 42 U.S.C. §§ 3601, *et seq.*[2] "Sexual harassment is actionable under the FHA when it creates a 'hostile housing environment' or constitutes 'quid pro quo' sexual harassment." *United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) (quoting *Quigley v. Winter*, 598 F.3d 938, 946–47 (8th Cir. 2010)). For purposes of this motion to dismiss, and consistent with the parties' arguments, the Court assumes that Plaintiffs have stated a plausible claim against Pfeiffer under the FHA.

### A.     Fruen's Vicarious Liability

Fruen argues that Plaintiffs have not asserted sufficient facts to hold him individually liable for acts attributable to his business entities and Pfeiffer. Fruen observes that the magistrate judge already has denied Plaintiffs' motion for leave to amend the complaint, in which Plaintiffs sought to include a claim to pierce the corporate veil by

---

[1] Neither Plaintiffs nor Fruen address liability under the MHRA. Because the MHRA shares a similar structure to the FHA, Plaintiffs contend, the same legal analysis applies to Fruen's liability under both statutory schemes.

[2] As relevant here, the FHA prohibits denying housing or making housing unavailable because of sex. 42 U.S.C. § 3604(a). It also is unlawful to discriminate in the terms, conditions or privileges of the rental of dwellings, or the provision of services in connection therewith, because of sex. *Id.* § 3604(b). Additionally, the FHA prohibits making statements with respect to the rental of housing that indicate a preference, limitation, or discrimination based on sex. *Id.* § 3604(c). And the FHA prohibits coercing, intimidating, threating, or interfering "with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by §§ 3603, 3604, 3605, or 3606 of this title." *Id.* § 3617.

advancing an alter-ego argument. Accordingly, Fruen contends, even if his companies are vicariously liable for Pfeiffer's conduct, Fruen cannot be held liable individually.

The FHA "imposes liability without fault upon the employer in accordance with traditional agency principles, *i.e.,* it normally imposes vicarious liability upon the corporation but not upon its officers or owners." *Meyer v. Holley*, 537 U.S. 280, 282 (2003). When traditional vicarious liability principles impose liability on a corporation, the corporation's liability may be imputed to the corporation's owner in certain cases by piercing the corporate veil. *Id.* at 292. Because Plaintiffs' amended complaint does not include a claim for piercing the corporate veil, Plaintiffs have not stated a plausible claim for the liability of Fruen's business entities to be imputed to Fruen individually.

### B. Fruen's Direct Liability

Plaintiffs contend that Fruen's arguments ignore Plaintiffs' claim against him for direct liability. Plaintiffs cite federal regulations implementing the FHA that provide for a person's direct liability based on discriminatory housing practices, even when the discriminatory conduct is performed by another person. These federal regulations provide the following:

> (a) Direct Liability.
>
> (1) A person is directly liable for:
>
> (i) The person's own conduct that results in a discriminatory housing practice.
>
> (ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person

> knew or should have known of the discriminatory conduct.
>
> (iii)   Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.
>
> . . .
>
> (b)   Vicarious liability. A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law.

24 C.F.R. § 100.7.

At most, the Department of Housing and Urban Development's (HUD) regulations are entitled to *Chevron* deference in an action brought under the FHA. *See A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 17-cv-07385, 2019 WL 3532178, at *7 n.7 (S.D.N.Y. Aug. 2, 2019) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Courts "ordinarily defer to an administering agency's reasonable interpretation of a statute." *See Meyer*, 537 U.S. at 287 (citing *Chevron*, 467 U.S. at 842–45). HUD, the federal agency primarily charged with implementing the FHA, has specified that ordinary vicarious liability rules apply in this area. *Id.*

"Section 100.7 does not create liability that does not already exist," HUD explained when promulgating 24 C.F.R. § 100.7. *See* Quid Pro Quo and Hostile Environment

7

Harassment and Liability for Discriminatory Housing Policies Under the Fair Housing Act, 81 Fed. Reg. 63054-01, 63067 (Sept. 14, 2016). Section 100.7(a)(1)(iii) creates neither new nor enhanced liability for housing providers. *Id.* at 63069. HUD explained that liability for discriminatory conduct of a "third party," as the term is used in Section 107(a)(i)(iii), is appropriately limited to "a non-employee or non-agent who engaged in quid pro quo or hostile environment harassment." *Id.* at 63067. Moreover, Section 107(a)(1)(iii) clarifies that "*a housing provider* is liable under the Fair Housing Act for third-party conduct if the provider knew or should have known of the discriminatory conduct, has the power to correct it, and failed to do so."[3] *Id.* at 63068 (emphasis added).

When examined as a whole, these regulations offer no basis to impute direct liability to Fruen in his individual capacity. To begin, Section 100.7(b) codifies federal vicarious liability law, holding a principal *vicariously liable* for the acts of its agents regardless of whether the principal knew of the agent's conduct. *See Meyer*, 537 U.S. at 286 ("[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for a tort committed by its employees or agents."). A principal is *directly liable* when the principal or employer knew or should have known of the agent's or employee's conduct. 24 C.F.R. § 107(a)(1)(ii). Section 100.7(a)(1)(iii) simply extends the concept of direct liability embodied in Section 100.7(a)(1)(ii) to the discriminatory conduct of non-employees or non-agents, such as a

---

[3] As it relates to vicarious liability under Section 100.7(b), HUD adopted "well-established principles of agency law" and did not "add any new forms of liability . . . or create obligations that do not otherwise exist." *Id.* at 63068, 63072.

tenant-to-tenant harassment if the housing provider has the power to correct the discriminatory conduct. Section 107(a)(1)(iii) does not expand the universe of persons who may be directly liable—housing providers. Rather, Section 107(a)(1)(iii) expands the universe of persons whose conduct a housing provider may be directly liable for failing to control. Such reasoning is consistent with HUD's statement that Section 107 does not create new or enhanced liability; rather, it reflects existing law. *Cf. Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364–65 (8th Cir. 2003) (concluding that an owner may be liable for acts of tenants and management's children after failing to respond to plaintiff's complaints of harassment); *Fahnbulleh v. GFZ Realty, LLC*, 795 F. Supp. 2d 360, 364 (D. Md. 2011) (holding that there is no categorical rule that prevents FHA recovery against landlords for tenant-on-tenant harassment).

Plaintiffs' amended complaint identifies Pfeiffer as the manager and landlord of both the Maryland Avenue Property and the Nicollet Avenue Property. Because MFP and F&P are both the owners of the properties and Pfeiffer's employer, MFP and F&P may be held directly liable for failing to take prompt action to correct and end a discriminatory housing practice by a third-party if MFP and F&P knew or should have known of the discriminatory conduct and also had the power to correct it. But the potential liability of MFP and F&P does not implicate direct liability for Fruen in his individual capacity. Nor does any aspect of the complaint suggest that Fruen, in his individual capacity, had any legal responsibility with respect to Pfeiffer's conduct or the power to control it. *See* 24 C.F.R. § 100.7(a)(1)(iii) ("The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's

9

control or any other legal responsibility the person may have with respect to the conduct of such third-party.").

Accordingly, Plaintiffs fail to state a claim under the FHA and MHRA against Fruen in his individual capacity.

## II.    Negligent-Supervision Claim

Fruen also moves to dismiss Plaintiffs' negligent-supervision claim, arguing that the claim must be dismissed because Pfeiffer was not an agent or employee of Fruen. Plaintiffs counter that they have pled sufficient facts to establish a principal-agent relationship.

Minnesota courts recognize the tort of negligent supervision, "which derives from *respondeat superior* and, hence, is predicated on vicarious rather than direct liability, even though the claim is asserted directly against the employer." *Damgaard v. Avera Health*, 108 F. Supp. 3d 689, 695–96 (D. Minn. 2015). Negligent supervision occurs when an employer "fails to exercise ordinary care to prevent the foreseeable misconduct of its employee." *Soto v. Shealey*, 331 F. Supp. 3d 879, 887 (D. Minn. 2018). Such misconduct must rise to the level of an intentional tort and cause a physical injury. *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 442–43 (Minn. Ct. App. 1996); *Johnson v. Peterson*, 734 N.W.2d 275, 277 (Minn. Ct. App. 2007) (physical injury allegation required).

Plaintiffs fail to state a negligent-supervision claim against Fruen because Plaintiffs fail to sufficiently plead an agency employee-employer relationship between Pfeiffer and Fruen. *Johnson*, 734 N.W.2d at 277. Plaintiffs also fail to allege any physical injury from the discriminatory conduct. *Id.* Plaintiffs allege only that Defendants' actions caused

10

emotional and financial injuries. Accordingly, Plaintiffs' negligent-supervision claim against Fruen must be dismissed.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Michael Fruen's motion to dismiss, (Dkt. 91), is **GRANTED**, and Plaintiffs' claims against Fruen are **DISMISSED WITHOUT PREJUDICE**.

Dated: October 20, 2020                                s/Wilhelmina M. Wright
                                                       Wilhelmina M. Wright
                                                       United States District Judge